UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CONTINENTAL INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, COLUMBIA CASUALTY COMPANY and NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, as successor by merger to Transcontinental Insurance Company,<br><br>    Plaintiffs,<br><br>  vs.<br><br>HEXCEL CORPORATION,<br><br>    Defendant. | Case No.: 12-cv-05352-YGR<br><br>**ORDER GRANTING DEFENDANT HEXCEL CORPORATION'S MOTION TO DISMISS OR STAY** |

Plaintiffs, The Continental Insurance Company, Continental Casualty Company, Columbia Casualty Company, and National Fire Insurance Company of Hartford (collectively, the "Companies" or "Plaintiffs"), filed this declaratory relief action against Defendant Hexcel Corporation ("Hexcel" or "Defendant") on October 17, 2012.  (*See* Compl. [Dkt. No. 1].) Plaintiffs, who have issued ten insurance policies to Hexcel, seek a judicial declaration that they have no obligation to defend or indemnify Hexcel in connection with claims of environmental property damage and contamination at a site in New Jersey.  (Compl. ¶¶ 37–51.)  Hexcel initiated its own action in the Superior Court of New Jersey seeking a declaratory judgment against all eighteen of its insurers, including all four Plaintiffs ("New Jersey Action"); Hexcel also alleges breach of contract against thirteen of those insurers, including all four Plaintiffs, and seeks money damages.  (Declaration of Rodney P. Jenks in Support of Hexcel Corporation's Motion to Stay or

Dismiss, Ex. A (*Hexcel Corporation v. Allianz Underwriters Ins. Co.*, Complaint ["New Jersey Action Compl."]) ¶¶ 2, 45–58 [Dkt. Nos. 23-1–23-2].)

Hexcel has filed a Motion to Dismiss or Stay this action in favor of the New Jersey Action based on the abstention doctrines set forth in *Wilton v. Seven Falls Co.* and *Brillhart v. Excess Insurance Co. of America* (sometimes referred to as the "*Wilton/Brillhart* Abstention Doctrine"). ("Motion" or "Mot." [Dkt. No. 23] at 2.) Plaintiffs have filed an Opposition to Motion to Dismiss or Stay. ("Opposition" or "Opp." [Dkt. No. 24].) Defendant filed a reply in turn. ("Reply" [Dkt. No. 25].) The Court held oral argument on the Motion on March 5, 2013. (Dkt. No. 28.)

Pursuant to the Court's request, the parties jointly filed a copy of the Transcript of Hearing in the New Jersey Action that occurred on March 4, 2013. (Dkt. No. 30.) With the transcript, Plaintiffs filed a Request for Supplemental Briefing, which Defendant opposes. (Dkt. Nos. 31 & 32.)

Having carefully considered the papers submitted and the pleadings in this action, the arguments of counsel, and for the reasons set forth below, the Court hereby **GRANTS** Hexcel's Motion to Dismiss. Plaintiffs' Request for Supplemental Briefing is **DENIED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Hexcel owns or operates a variety of chemical and manufacturing facilities throughout New Jersey. (Compl. ¶¶ 9–13.) The allegations in the Complaint stem from contamination that originated from a site currently owned by Hexcel in Lodi, New Jersey ("Hexcel Site"). (*Id.* ¶ 9.) At least fifty-one insurance policies, issued by more than eighteen insurers (including the Companies), may be obligated to defend or indemnify Hexcel in connection with claims of contamination at the Hexcel Site. (Mot. at 1, 8.) In the Complaint, Plaintiffs allege that Hexcel has been subject to state and federal investigation and remediation orders and requirements arising from contamination that migrated beyond the Hexcel Site itself, including the Saddle River, Lower Passaic River, and other adjacent areas. (Compl. ¶ 14.) This includes orders issued by the New Jersey Department of Environmental Protection ("Department"). (*Id.* ¶ 15.) Plaintiffs allege that Hexcel notified the Companies of the Department's mandate to investigate and remediate the Hexcel Site, but they "determined that they had no coverage obligation, and declined to fund such

an investigation and remediation." (*Id.* ¶ 16; *see id.* ¶ 18.) The Department filed suit against various third-party companies for the hazardous substances discharged on those properties which have migrated throughout rivers and other waters in New Jersey, and have sought reimbursement for investigation, cleanup, and removal costs incurred. (*Id.* ¶ 19.) These third-party companies have, in turn, sued Hexcel and others for contribution. (*Id.* ¶ 20.)

On October 17, 2012, Plaintiffs filed this declaratory relief action under 28 U.S.C. section 2201 and Federal Rule of Civil Procedure 57. (Compl. ¶ 8.) Plaintiffs seek a judicial declaration that they have no obligation to defend or indemnify Hexcel under ten insurance policies relating to the New Jersey environmental claims. (*Id.* ¶¶ 37–51.) The specific policies at issue are policy numbers: L4418090; RDU 9756696; RDU 1863061; RDU 3652978; RDU 3653521; SXP 3584336; UMB 8450070; SXP 3584368; UMB 1631386; SXP 3584405. (*Id.* ¶¶ 23–32.) The Companies allege that Hexcel had knowledge of the contamination at the Hexcel Site and that the contamination was migrating off-site through industrial drains and storm sewers, into groundwater, and onto third-party property. (*Id.* ¶ 34.)

On October 25, 2012, Hexcel filed a lawsuit in New Jersey in which it seeks declaratory relief, breach of contract, and damages from the Companies, *in addition to* fourteen other insurers. (New Jersey Action Compl. ¶¶ 1–9, 45–58 & Attachment A.) In that action, Hexcel seeks a declaration with respect to liabilities, losses and expenses it has or may incur due to: "certain 'natural resource damage' claims" asserted against Hexcel by federal regulatory agencies in connection with the Passaic River and response costs; a contribution claim asserted against Hexcel; and liabilities "resulting from environmental conditions existing at and about a former manufacturing facility in Lodi, New Jersey." (*Id.* ¶¶ 2–3; *see id.* ¶¶ 12–38.) Nine of the ten insurance policies at issue in this action are at issue in the New Jersey Action. (New Jersey Action Compl., Attachment A.) At least forty other policies from other insurers are also at issue in that action. (*Id.*) The contamination of locations at issue in the New Jersey Action constitutes what is

likely "the largest pollution site that affects property in New Jersey." (Joint Filing Of Transcript And Order In New Jersey Action, Ex. A [Dkt. No. 30] at 80:13–16.)[1]

## II. DISCUSSION

### A. *Wilton/Brillhart* Abstention Doctrine and Relevant Ninth Circuit Factors

Title 28 U.S.C section 2201, known as the Declaratory Judgment Act, is permissive in nature. It provides that "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (Emphasis supplied.) Based on its permissive nature, the Supreme Court has held: "a district court has discretion to dismiss a federal declaratory judgment action when 'the questions in controversy . . . can better be settled in' a pending state court proceeding." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (quoting *Brillhart v. Excess Insurance Co. of America,* 316 U.S. 491, 495 (1942)); *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (a district court may decline to entertain a federal declaratory judgment action when "parallel proceedings[] present[] opportunity for ventilation of the same state law issues[ that are] underway in state court").

"[T]here is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage actions specifically." *Gov't Emps. Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 (9th Cir. 1998) (*en banc*) ("*Dizol*"). In *Dizol*, 133 F.3d at 1225 n.5, the Ninth Circuit held that where an insurer sues its insured for a declaratory judgment of no coverage, a court should consider the factors from *Brillhart* and *American States Insurance Co. v. Kearns,* 15 F.3d 142 (9th Cir. 1994) ("*Kearns*").

The three *Brillhart* factors are the "philosophic touchstone" of the *Wilton/Brillhart* analysis. *R.R. St. & Co. Inc.*, 656 F.3d at 975. A district court should: (1) avoid "needless determination of state law issues"; (2) discourage "forum shopping"; and (3) avoid "duplicative litigation." *R.R. St. & Co. Inc.*, 656 F.3d at 975 (citing *Dizol,* 133 F.3d at 1225); *Brillhart*, 316 U.S. at 494–95. Additionally, a district court may consider: (4) whether the declaratory action will settle all aspects

---

[1] The Joint Filing Of Transcript And Order In New Jersey Action (Dkt. No. 30) consists of a Transcript of Hearing (attached as Exhibit A) and Order (attached as Exhibit B). The Court will refer to these respective documents as the "New Jersey Transcript" and "New Jersey Order."

4

of the controversy; (5) whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; (6) whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage; (7) whether the use of a declaratory action will result in entanglement between the federal and state court systems; (8) the convenience of the parties; and (9) the availability of and relative convenience of other remedies. *Dizol*, 133 F.3d at 1225 n.5 (citing *Kearns*, 15 F.3d at 145 (J. Garth, concurring)). "Essentially, the district court must balance concerns of judicial administration, comity, and fairness to the litigants." *Kearns*, 15 F.3d at 144; *see also Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005) (quoting the same).

**B.  Analysis**

The decision whether to dismiss or stay this action brought under 28 U.S.C section 2201 rests in the discretion of this Court. *Wilton*, 515 U.S. at 288; *Brillhart*, 316 U.S. at 494; *R.R. St. & Co. Inc.*, 656 F.3d at 975. For the reasons discussed below, the Court finds that this action should be dismissed in light of the more comprehensive New Jersey Action.

**1.  Avoiding Needless Determination of State Law Issues**

If this action entails determinations of unsettled issues of state law, a stay or dismissal is favored. *Dizol,* 133 F.3d at 1225. This relates to unsettled issues of law generally, not unsettled issues of fact in the specific action. *See Cont'l Cas. Co. v. Robsac Indus.,* 947 F.2d 1367, 1371 (9th Cir. 1991) (overruled in part on other grounds by *Dizol*). A stay is warranted if "[t]he precise state law issues at stake in the present case are the subject of a parallel proceeding in state court." *Id.*

Plaintiffs here seek a declaration regarding the scope of insurance coverage, which is governed solely by applicable state law. There are no issues of federal law in this action. To the extent that the parties dispute which state's law applies: if California law applies, this Court may be better suited than a New Jersey court to determine these issues. However, the converse is also true—if New Jersey law applies, a New Jersey court may be better suited to resolve the issues. At this point, the Court is not in a position to determine which state's law applies to the insurance

contracts at issue, and in any event, the law is not "unsettled" merely because there is a dispute over the applicable law. This factor favors neither party.

### 2. Avoiding Duplicative Litigation

If the declaratory judgment action is duplicative of the issues being litigated in the state action, a stay or dismissal is favored. *Dizol,* 133 F.3d at 1225; s*ee R.R. Street,* 656 F.3d at 975. Defendants emphasize that the Companies are parties to both actions and both actions seek a declaration regarding the same coverage responsibilities under nine of the Companies' policies. (Mot. at 11.) Plaintiffs do not dispute this fact, but point to other reasons why the Court should retain this action. (Opp. at 3–5.)

The Court notes that although the New Jersey Action seeks declaratory relief, that relief pertains to many more insurers' responsibilities. Additionally, breach of contract is affirmatively alleged against thirteen insurers, including the Companies. That action *will* proceed with the Companies as defendants. (New Jersey Transcript at 82:22–25 (denying motion to stay or dismiss against "CNA defendants," who are the Plaintiffs here); New Jersey Order at 2 (same).) Absent a dismissal or stay, the state and federal proceedings will undoubtedly continue in parallel, involving similar, if not identical, factual and legal issues regarding the Companies' insurance policies. (*See* New Jersey Transcript at 68:4–17 (accepting that the two cases are substantially similar).) Because the New Jersey Action will determine the issues of the Companies' coverage responsibilities to Hexcel and is likely to comprehensively resolve the issue of all insurers' coverage responsibilities stemming from the same underlying incidents, maintaining this action separately will result in duplicative litigation. This factor weighs strongly in favor of dismissal or a stay.

### 3. Avoiding Forum Shopping

Both parties accuse the other of engaging in forum shopping. Courts have defined improper forum shopping to encompass situations where the action is "reactive" or "defensive." *Dizol*, 133 F.3d at 1225; *Am. Cas. Co. of Reading, Pennsylvania v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999) ("*Krieger*") (an insurer should be discouraged from filing a federal court declaratory action to see if it might fare better in federal court while also engaged in a state court action).

It cannot be disputed that the two actions were filed eight days apart. The Companies argue (and Hexcel does not dispute) that Hexcel immediately filed the New Jersey Action in response to being served in this action. However, Hexcel claims the Companies engaged in forum shopping by pretending to be engaged in a claim investigation and discussion of coverage issues, while secretly preparing a preemptive federal court filing. (Mot. at 16.)

At this time and on this record, the Court does not take a position regarding whether either side acted improperly and/or engaged in forum shopping. Thus, this factor is neutral.

### 4. Whether This Action Will Settle All Aspects of the Controversy

As a matter of judicial economy, a district court should not entertain a declaratory action when the result would be to try a particular controversy piecemeal, or to try particular issues without settling the entire controversy. *See Dizol,* 133 F.3d at 1225 n.5. Plaintiffs argue that only *this* action will settle *all* aspects of the controversy as between the Companies and Hexcel because this action seeks declaratory relief "to adjudicate the interpretation and application of the settlement agreement as to the 1973 primary policy as respects the Contamination Claims." (Opp. at 19.) Hexcel responds that the New Jersey Action will determine the broad scope of the Companies' defenses to coverage, and that those determinations will apply to *all* policies at issue. (Reply at 5–6.) Moreover, Hexcel stated at oral argument that the settlement agreement is, in fact, at issue in the New Jersey Action with respect to other parties.

On balance, and despite the Companies' argument regarding the settlement agreement, far more judicial efficiency stands to be achieved by deferring to the New Jersey Action. That action will comprehensively determine all insurers' obligations to Hexcel, including nine of the ten policies at issue here. Further, the court in New Jersey is just as capable to determine the issue regarding the settlement agreement as this Court is. Because substantially more of the controversy relating to the Hexcel Site can be determined by the New Jersey Action, along with the vast majority of issues here, this factor weighs strongly in favor of dismissal or a stay.

### 5. Whether This Action Will Clarify Legal Relations

A stay or dismissal is favored if the instant declaratory relief action will not resolve any legal relationship between the parties. *Dizol,* 133 F.3d at 1225 n.5. By and large, the

7

United States District Court
Northern District of California

resolution of either action is likely to clarify the legal relations between the Companies and Hexcel regarding coverage under the relevant policies. While there may be discrete issues regarding the Companies' and Hexcel's relationship that may not be fully resolved by the other action, this factor generally weighs against dismissal or a stay.

**6. Whether This Action Is Being Sought For Procedural Fencing or Res Judicata**

A stay or dismissal is favored if this declaratory relief action is commenced with the intent of obtaining a procedural or res judicata advantage. *Dizol*, 133 F.3d at 1225 n.5. Both parties argue, for reasons similar to the issue of forum shopping, that the other seeks to gain a procedural advantage or res judicata effect. (Opp. at 15–16; Mot. 22–23.)

As noted above, the Court does not take a position regarding whether either side seeks an improper advantage on this record. Thus, this factor is neutral.

**7. Avoiding Federal-State Court Entanglement**

A stay or dismissal is favored if the issues at stake in the state court proceeding are indistinguishable from issues in the federal action. *Dizol*, 133 F.3d at 1225 n.5. As discussed above, this action is effectively encompassed within the New Jersey Action with the exception of one policy. Plaintiffs argue that issues of California law make this Court the more appropriate forum to determine coverage issues as to the Companies and Hexcel. (Opp. at 14, 20–21.)

On the other hand, New Jersey has an intense and unambiguous interest in maintaining jurisdiction over insurance disputes involving environmental sites within its borders. *Sensient Colors, Inc. v. Allstate Ins. Co.*, 193 N.J. 373, 394 (2008). In *Sensient*, the New Jersey Supreme Court affirmed the appellate court's reinstatement of a New Jersey environmental coverage action where the site of the alleged environmental contamination was in New Jersey. *Id.* (reinstating action even though the New Jersey Action was filed months after duplicative action in New York). As the Honorable Sebastian P. Lombardi made clear, "the most important special equity for not deferring to the first [to file] -- rule is New Jersey's strong public policy interest in remediation or environmental contamination within its borders. That interest includes insuring that insurance

policy holder is not wrongly denied funds for the cleanup of the hazardous . . . waste [] site." (New Jersey Transcript at 73:16–18.)[2]

Furthermore, Judge Lombardi noted that "[t]his case touches not just on property, but on the health and safety of New Jersey's residents." (New Jersey Transcript at 73:20–21.) Therefore, citing *Sensient* and New Jersey's overwhelming policy in retaining jurisdiction over cases involving the remediation of environmental contamination within its borders, the New Jersey court denied the Companies' motion to dismiss or stay the New Jersey Action. (New Jersey Transcript at 80:8–12 (noting "New Jersey['s] strong [] interest and the governmental interest to protect New Jersey policy holders and the victims of pollution and protect the New Jersey environment") & 82:15–21 (disagreeing that "issues of forum non-conveniens or [the] interest of California outweigh[] the special equity that New Jersey has in making sure [its] lands and waterways are cleaned up[.] . . . [I]ssues concerning availability of insurance to contribute towards that should be here in New Jersey.").)

In light of the above, there is a strong risk of entanglement between the federal and state courts. In particular, each court may be called upon to interpret the effect of the rulings or findings of the other, given that similar, if not identical, factual and legal determinations must be made. If the courts disagree, then entanglement ensues. If the courts agree, duplicative efforts will still have been made for one court to determine the same issue that the other court has decided. Because of Judge Lombardi's explicit statements of the importance of maintaining the action against the Companies in New Jersey, judicial efficiency dictates that he should be the judge determining the issues in the first instance.

---

[2] Plaintiffs argue the *Wilton/Brillhart* Abstention Doctrine is entirely inapplicable because no state court action was pending when they first-filed this federal action. (Opp. at 6–8.) By limiting *Wilton/Brillhart* to situations where the federal action is filed second, Plaintiffs argue this comports with the "first-to-file rule," promoting efficiency, judicial economy, and the interests of the first plaintiff in choosing a forum. (*Id.* at 9.) However, in *Krieger*, the Ninth Circuit held that "the [district] court was entitled to evaluate the motion to dismiss under the circumstances that existed at the time the [jurisdictional] issue was raised rather than at the time of filing [of the federal action]." 181 F.3d at 1119 (citing *Dizol*, 133 F.3d at 1224). Moreover, "[t]iming is only one consideration when deciding whether to entertain a declaratory judgment action, and the *Wilton/Brillhart* factors sometimes compel a court to decline to entertain an earlier-filed action in favor of a later-filed action." *R.R. St. & Co.*, 656 F.3d at 976; se*e also Wilton*, 515 U.S. at 280–82 (affirming dismissal of a federal action in light of a later-filed state action); *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802–04 (9th Cir. 2002) (affirming dismissal of an earlier-filed declaratory action but remanding a later-filed one). Moreover, the Court notes that 28 U.S.C. section 2201, upon which this action is brought, is permissive in the first place.

For these reasons, this factor weighs strongly in favor of dismissal or a stay in favor of the New Jersey Action.

### 8. Convenience of the Parties

A stay or dismissal is favored if it would avoid undue hardship for a party. *Dizol,* 133 F.3d at 1225 n.5. Defendant argues that New Jersey is the more convenient forum because the environmental damage is confined to New Jersey and witnesses relating to the underlying environmental damage are located there. (Mot. at 24.) Additionally, witnesses with knowledge relating to the insurance policies at issue are likely to be found at the Companies' offices —all located in Chicago, Illinois—and Hexcel's offices in Stamford, Connecticut. (*Id.*) Plaintiffs argue that the convenience of the parties is neutral. (Opp. at 21.) They argue that this action concerns the interpretation of a settlement agreement and insurance contracts. (*Id.*) Thus, any witnesses would be deposed were they reside, regardless of the forum of the coverage litigation. (*Id.*)

The Court finds that neither party would suffer *undue* hardship or substantial prejudice if this action were to proceed in California, although it acknowledges that with respect to the environmental issues, not the contract issues, the location of documents, witnesses, and the contamination sites slightly favor New Jersey. This is in accord with Judge Lombardi, who noted that "none of the forum non-convenience or other factors weigh strongly one way or the other." (New Jersey Transcript at 79:2–5; *see id.* at 77:3–79:5 (finding that the clean-up of the contaminated site in New Jersey to be the only dominant and dispositive factor). Therefore, the convenience factor is neutral.

### 9. Availability of and Relative Convenience of Other Remedies

The final prudential consideration in determining whether to exercise jurisdiction is "the convenience of the parties, and the availability and relative convenience of other remedies." *Dizol,* 133 F.3d at 1225 n. 5. Neither party argues the availability of and relative convenience of other remedies. Therefore, the Court finds that this factor is neutral.

### III. CONCLUSION

For the foregoing reasons, the Court finds that under the *Wilton/Brillhart* Abstention Doctrine, it should exercise discretion and defer the resolution of these matters to the ongoing, more comprehensive New Jersey Action.  The Court hereby **DECLINES** to exercise jurisdiction over the instant action.  *See* 28 U.S.C. § 2201.  Because the Court believes that the New Jersey court is fully capable of resolving the controversies alleged in this action, the Court elects to **DISMISS** rather than stay pending the conclusion of that action.  Accordingly, Hexcel Corporation's Motion to Dismiss this action is **GRANTED.**  As stated above, Plaintiffs' Request for Supplemental Briefing is **DENIED**.

This Order terminates Dkt. Nos. 22 & 31.

**IT IS SO ORDERED**.

Date: April 10, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**